UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MJC VENTURES LLC, and MARK CAMPBELL**, | 2:19-cv-13707 |
| Plaintiffs, | |
| v. | HON. TERRENCE G. BERG |
| **DETROIT TRADING COMPANY, ET AL.**, | **ORDER GRANTING MOTION TO DISMISS** |
| Defendants. | |

In this business and family dispute over the control of Defendant Detroit Trading Company ("Detroit Trading"), former Chief Executive Officer and Board member Mark Campbell and his limited-liability corporation, MJC Ventures LLC ("MJC")—a shareholder of Detroit Trading—are suing Detroit Trading and its directors, who took actions to remove Campbell from his leadership positions and terminated his lucrative consultancy agreement with the company. The individual Defendants, Peter Bonner, John Campbell[1], and Anik Ganguly, comprise Detroit Trading's current Board of Directors.

Although the bulk of the claims arise entirely under Michigan statutory and common law for shareholder oppression, breach of fiduciary duty, and unjust enrichment, Plaintiffs have also added federal

---

[1] Unless otherwise specified, references to "Campbell" throughout this Order are to Plaintiff Mark Campbell (as opposed to Defendant John Campbell).

1

claims of trademark infringement and cybersquatting, thus creating federal-question jurisdiction. Defendants have moved to dismiss the Second Amended Complaint, urging that shareholder votes and written business decisions by the Board of Directors, although perhaps unfavorable to Campbell and MJC, are not legally actionable. They also highlight other deficiencies in Plaintiffs' pleading. Finding that Plaintiffs have failed to plausibly allege grounds on which relief could be granted, the Court will dismiss the Second Amended Complaint without prejudice and grant Plaintiffs leave to amend their pleading within 30 days of the date of this Order.

## BACKGROUND

Detroit Trading is a Michigan corporation in the business of connecting consumers interested in purchasing cars or other motor vehicles with automotive dealerships; it sells "leads"—information about customers seeking to buy a car. ECF No. 1-3, PageID.89, 93 (Second Am. Compl.). Plaintiffs claim that the individual Defendants, who own approximately 44 percent of Detroit Trading's stock, staged a corporate "coup" against Campbell by enlisting other shareholders to form a majority capable of ousting Campbell, a minority shareholder, from company leadership. ECF No. 1-3, PageID.90, 96, 114.

MJC, the other Plaintiff, is a Michigan limited-liability corporation and shareholder of Detroit Trading. ECF No. 1-3, PageID.89. Campbell is MJC's sole member and manager. *See* ECF No. 1-3, PageID.89.

Plaintiffs claim the parties had a "mutual agreement and/or practice" by which Detroit Trading provided MJC with compensation amounting to $60,000 each month for work Campbell carried out on behalf of Detroit Trading. ECF No. 1-3, PageID.96, 109, 116.

As set forth in the Second Amended Complaint, pursuant to a July 2019 written shareholders' consent, a majority of Detroit Trading's shareholders agreed to amend the company's bylaws to increase the number of seats on the Board of Directors from two to three and provide for election of new Directors by majority vote. ECF No. 1-3, PageID.106; ECF No. 9-1, PageID.212–13 (Jul. 29, 2019 Written Consent of Shareholders I). Through that same written shareholders' consent, a majority of Detroit Trading's shareholders then agreed to remove Campbell from the Board of Directors, finding that shift "in the best interests of the Corporation." ECF No. 9-1, PageID.214. The consent was signed by individual Defendants Bonner, Ganguly, and John Campbell, as well as other shareholders who are not parties to this lawsuit. ECF No. 9-1, PageID.215. According to Plaintiffs, the shareholders who signed the written consents held 52 percent of Detroit Trading's stock, a clear majority. *See* ECF No. 9-1, PageID.215; ECF No. 1-3, PageID.104–05.

A separate written consent also signed by a majority of Detroit Trading's shareholders provided for the election of individual Defendants Bonner, Ganguly, and John Campbell to the Board of Directors. ECF No. 9-2, PageID.225 (Jul. 29, 2019 Written Consent of Shareholders II).

These newly elected Directors then executed yet another written consent removing Campbell from "any and all" offices he held at Detroit Trading and terminating "any and all employment, consulting, or contractor contracts, agreements, or arrangements" with Campbell and any entity owned or controlled by him, including MJC. ECF No. 9-3, PageID.235 (Unanimous Written Consent of Bd. of Directors). These actions, the consent stated, were "in the best interests of the Corporation." ECF No. 9-3, PageID.235.

Plaintiffs, who remain minority shareholders in Detroit Trading, protest that the consent documents executed by a majority of Detroit Trading's shareholders and by the newly elected Board of Directors deprived Campbell of any ability to influence the management of the company. They further complain that termination of MJC's unwritten consulting arrangement prevents Campbell from receiving "virtually any return on his shareholder investment." ECF No. 1-3, PageID.108, 116. Additionally, Plaintiffs allege breach of fiduciary duty by the individual Defendants and cast as shareholder oppression Defendants' decisions not to declare shareholder dividends, to "excessively compensate" John Campbell and Peter Bonner, and to exclude Plaintiffs from discussions related to the shareholder consents. ECF No. 1-3, PageID.104, 119. Finally, Plaintiffs claim Defendants infringed Campbell's 1800CARSHOW trademark and related 1-800-CAR-SHOW phone number and 1800CARSHOW.com domain name—which Campbell also

4

claims to own—following termination of his relationship with Detroit Trading. Plaintiffs further allege that Defendants have engaged in cybersquatting concerning the marks.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss a lawsuit if they determine that the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

In evaluating a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

## DISCUSSION

### I.   Plaintiffs have not stated a claim for shareholder oppression in violation of Mich. Comp. Laws § 450.1489

A shareholder may bring suit under the Michigan Business Corporation Act, Mich. Comp. Laws § 450.1489, "to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." The statute creates a means for minority shareholders to bring a direct action against those in control of a corporation for certain kinds of unlawful, fraudulent, or willfully unfair or oppressive conduct. *Blankenship v. Superior Controls, Inc.*, 135 F. Supp. 3d 608, 618 (E.D. Mich. 2015) (citing *Estes v. Idea Eng'r & Fabrications, Inc.*, 649 N.W.2d 84 (Mich. Ct. App. 2002)). A shareholder who succeeds in establishing director misconduct may be granted a wide variety of equitable relief. *See* Mich. Comp. Laws § 450.1489. In this case, however, because Plaintiffs acknowledge the Defendant Directors were elected by a majority of shareholders and acted pursuant to written consents in terminating Campbell's and MJC's relationships with Detroit Trading, by the terms of the statute there can be no claim for shareholder oppression.

To state a claim for shareholder oppression, a plaintiff must allege the following: (1) that he is a shareholder of the corporation; (2) that the defendants were "directors" or "in control of the corporation"; (3) that the defendants engaged in acts; and (4) that those acts were "illegal,

fraudulent, or willfully unfair and oppressive" to the corporation or to plaintiff-shareholders. *See Smith v. Smith*, No. 19-10330, 2020 WL 2308683, at *8 (E.D. Mich. May 8, 2020). When the claim is that defendants' acts were "willfully unfair and oppressive," the plaintiff must allege that: (1) "the acts amounted to a 'continuing course of conduct or a significant action or series of actions that substantially' interfered with their interests as shareholders"; and (2) "defendants took those acts with the intent to interfere with their interests as shareholders." *Id.* (quoting Mich. Comp. Laws § 450.1489(3)). *See Franks v. Franks*, No. 343290, 2019 WL 4648446, at *10 (Mich. Ct. App. Sep. 24, 2019). But the statute also contains a safe harbor of sorts that excludes from the definition of "willfully unfair and oppressive conduct" any "conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure." *Smith*, 2020 WL 2308683, at *8 (citing Mich. Comp. Laws § 450.1489(3)).

Here, there is no dispute that Campbell was removed from the Board of Directors by written agreement of a majority of Detroit Trading's shareholders, only some of whom are named as individual Defendants in this case. *See* ECF No. 9-1, PageID.214. The new Board of Directors was elected in the same manner, as permitted under the company's amended bylaws. ECF No. 9-2, PageID.225. That same Board of Directors then resolved, in writing, to terminate Campbell's and MJC's association with Detroit Trading. ECF No. 9-3, PageID.235. Nowhere do

Plaintiffs specifically allege that these actions by Detroit Trading's shareholders and newly installed Board of Directors were inconsistent with the company's articles of incorporation or bylaws, nor do Plaintiffs dispute that they were taken pursuant to written agreements by a majority of company shareholders, and the Board.

*Madugula v. Taub*, 853 N.W.2d 75, 93 (Mich. 2014), which Plaintiffs cite for the proposition that shareholders have certain statutory rights including "the right to vote, inspect the books, and receive distributions," also explains that shareholders may modify those rights by entering into voting agreements and shareholder agreements. In this case, even the complaint concedes that a majority of Detroit Trading's shareholders—including some who are not among the individual Defendants—approved the shareholder consents at issue. Indeed, shareholder consent agreements such as those to which Plaintiff objects are authorized by Michigan law. Section 450.1461 of Mich. Comp. Laws provides that "An agreement between 2 or more shareholders, if in writing and signed by the parties may provide that in exercising voting rights, the shares held by them shall be voted as provided in the agreement." Plaintiffs have not alleged facts showing how the challenged shareholder and Board decisions—which are set forth in writing—constitute "willfully unfair and oppressive conduct" as defined by the plain language of Mich. Comp. Laws § 450.1489(3). These claims for shareholder oppression will accordingly be dismissed.

8

Plaintiffs' allegation that Defendants also engaged in shareholder oppression by refusing to declare dividends "despite Detroit Trading's ability to do so" is further foreclosed by Michigan's business judgment rule. ECF No. 1-3, PageID.118–19. Under that rule, courts generally refrain from substituting their judgment for that of directors when it comes to dividend policies, absent evidence of fraud or bad faith. *Franks*, 2019 WL 4648446, at *11 (citing *In re Butterfield Estate*, 341 N.W.2d 453 (1983)). As stated by the Sixth Circuit, courts will only interfere with a Board's decision not to declare dividends "if the refusal to declare dividends amounts to a breach of its fiduciary duty." *Wolding v. Clark*, 563 F. App'x 444, 454 (6th Cir. 2014) (applying Michigan law). The mere allegation that Detroit Trading's Board *could have* declared dividends, even when taken as true, does not warrant a finding that it was shareholder oppression for the Board not to do so. There is no allegation, plausible or not, that the Board's decision was motivated by fraud or bad faith—conditions courts have considered prerequisite for interfering with a company's decision not to declare dividends. *Id*. at 453.

Ultimately, none of Plaintiffs' allegations concerning shareholder oppression state a claim because the challenged shareholder and Board of Directors conduct was not "illegal, fraudulent, or willfully unfair and oppressive," or outside of the business judgment rule. The Court is additionally persuaded by Defendants' argument that Plaintiffs cannot state a claim for shareholder oppression because they are not claiming to

have suffered injury in their *capacity as shareholders*, but rather in Campbell's case as former officer and director and in MJC's case, a former business partner. *See* ECF No. 9, PageID.198–202 (Mot to Dismiss Br.). As the Michigan Court of Appeals emphasized in *Franks v. Franks*, 2019 WL 4648446, at *11, to make out a claim of shareholder oppression a plaintiff would have to establish that "defendants' acts were willfully unfair and oppressive to them *as shareholders* . . . interfered with their interests *as shareholders* and that defendants took those acts with the intent to interfere with their interests *as shareholders*." (emphasis added). Plaintiffs, in contrast, appear to take issue with Defendants' conduct largely in the context of Campbell's longstanding corporate leadership of Detroit Trading and the consulting work he has historically been compensated for via his company, MJC. But "exclusion from corporate governance is not recognized as minority oppression under this statute." *Wolding*, 563 F. App'x at 453. *See Hofmesiter Family Tr. v. FH Industries, LLC*, No. 06-CV-13984-DT, 2007 WL 1106144, at *5 (E.D. Mich. Apr. 12, 2007) ("[C]orporate governance is not a shareholder right and therefore not actionable under Section 1489 by Plaintiffs as a shareholder interest."). Nor does Mich. Comp. Laws § 450.1489 permit shareholders to recover for harm suffered in their capacity as employees or board members. *Pitsch v. Pitsch Holding Co., Inc.*, No. 340402, 340494, 2018 WL 6262647, at *7 (Mich. Ct. App. Nov. 29, 2018).

## II.   Breach of common-law fiduciary duties

Plaintiffs have not plausibly alleged that the individual Defendants breached their fiduciary duty by ending Detroit Trading's relationship with Campbell and MJC. In Michigan, directors and officers of corporations owe fiduciary duties and a strict duty of good faith to the corporation they serve, as well as to its shareholders. *Prod. Finishing Corp. v. Shields*, 405 N.W.2d 171, 174 (Mich. 1987). *See* Mich. Comp. Laws § 450.1541a(1) (codifying the common-law rule)). *See also Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012); *Wallad v. Access BIDCO, Inc.*, 600 N.W.2d 664, 666 (Mich. 1999) (per curiam). When a fiduciary duty exists, the fiduciary "has a duty to act for the benefit of the principal regarding matters within the scope of the relationship." *Prentis Family Found. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 906 (Mich. 2005) (per curiam). This means that directors must act on the shareholders' behalf "in good faith, 'with the degree of diligence, care and skill . . . which an ordinarily prudent and loyal person would exercise under similar circumstances in a like position." *Pittiglio v. Mich. Nat'l Corp.*, 906 F. Supp. 1145, 1154 (E.D. Mich. 1995) (quoting *Plaza Secs. Co. v. Fruehauf Corp.*, 643 F. Supp. 1535, 1542 (E.D. Mich. 1986)).

Plaintiffs have not alleged facts that adequately explain why the individual Defendants' decision to end Detroit Trading's relationship with Campbell and MJC was a breach of fiduciary duty. As fiduciaries,

11

the Directors certainly had a responsibility to act in the interest of their shareholders—and Campbell and MJC claim to be shareholders. But the Board of Directors had no fiduciary duty to act in the best interest of Campbell and MJC alone, while possibly acting to the detriment of the corporation or the remaining majority of its shareholders—which had approved the removal of Campbell and the election of the new Board. Rather, the Board's fiduciary duty to Campbell and MJC arose from their status as shareholders. Nowhere in the Second Amended Complaint do Plaintiffs articulate why the Board's fiduciary duty to its shareholders generally would require Detroit Trading to continue compensating Campbell and paying MJC consulting fees in particular. Plaintiffs have not pled facts warranting an inference that the individual Defendants had a fiduciary duty to continue Detroit Trading's relationships with Campbell and MJC. That claim will be therefore be dismissed.

## III.   Unjust enrichment

To state a claim for unjust enrichment under Michigan law, Plaintiffs must allege: "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of N.Y. Mellon*, 831 N.W.2d 897 (Mich. 2012). Here, Plaintiffs allege, first, that Defendants have been unjustly enriched by their continued use—without Plaintiffs' permission—of the 1800CARSHOW trademark, related telephone number, and domain name. ECF No. 1-3,

PageID.125–26. But they have not properly pled a claim for unjust enrichment as to the marks because Plaintiffs do not specifically allege how Defendants gained a specific benefit through use of the 1800CARSHOW trademark, related telephone number, and domain name. For example, Plaintiffs do not claim that they conferred ownership of the 1800CARSHOW marks on Defendants or a formal right to use the marks. Further, Plaintiffs do not specifically allege how the retention of such a benefit caused an inequity to Plaintiffs. They allege only that Defendants continue to use the marks when Plaintiffs no longer want them to. But to the extent Detroit Trading unjustly retained a benefit from its use of the marks, Plaintiffs, as Detroit Trading shareholders, would have shared in that benefit.

Plaintiffs say Defendants were also unjustly enriched by Campbell and MJC's $1.6 million investment in Detroit Trading. ECF No. 1-3, PageID.125. Regarding the investment, however, Defendants could not plausibly have been unjustly enriched because Plaintiffs acknowledge receiving stock in return for that investment. In fact, the Second Amended Complaint claims that, in return for their investment in Detroit Trading, Plaintiffs acquired "approximately 40% of the company's stock." ECF No. 1-3, PageID.95.

Finally, even if Plaintiffs could state a claim for unjust enrichment based on Defendants' continued use of Campbell's marks or Plaintiffs' investment in Detroit Trading, because the federal causes of action will

be dismissed the Court would decline to exercise supplemental jurisdiction over a state-law action for unjust enrichment only. The court would likewise decline to exercise such jurisdiction over Plaintiffs' state-law claims for shareholder oppression and breach of fiduciary duty in the wake of dismissal of the federal causes of action. These claims are deeply rooted in Michigan statutory law and jurisprudence, and as such would be properly resolved by the state courts.

## IV. Trademark infringement

Campbell next claims Defendants engaged in trademark infringement by continuing to use the 1800CARSHOW trademark, 1-800-CAR-SHOW phone number, and 1800CARSHOW.com domain name after the Board of Directors removed him from Detroit Trading's leadership. But it is not alleged that the parties in this case are selling competing goods or services, or that Defendants' alleged use of the marks in commerce was likely to cause consumer confusion. This is not the kind of situation that typically gives rise to a claim for trademark infringement.

To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: "(1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). The "touchstone" of a claim for trademark infringement is whether the

defendant's challenged use of the mark is "likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). In evaluating the likelihood of confusion, courts consider several factors, among which are "relatedness of the goods or services," "strength of the senior mark," "likelihood of expansion of the product line," and "evidence of actual confusion." *Id.*

Plaintiffs cite *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) for the proposition that "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark has been terminated is sufficient to establish 'likelihood of confusion.'" That case involved a franchise agreement under which the plaintiff allowed the defendant deck-construction business to use its Archadeck trademark and related marks. After plaintiff terminated the franchise agreement because of defendant's failure to pay royalties, the defendants continued to participate in an advertising program using the Archadeck trademark and received "numerous referrals" through that program after it was longer authorized to use plaintiff's mark. *Id.* at 1187. The district court found the plaintiff had demonstrated a likelihood of confusion through affidavits from consumers who purchased products from defendants following termination of the franchise agreement. Those consumers said they had been under the false impression that they were purchasing Archadeck products when in reality the defendant company

15

they purchased goods from no longer had any affiliation with the Archadeck franchise. *Id.* at 1190. The district court further found that "defendants intentionally used the Archadeck trademark to obtain business." *Id.* The existence of a likelihood of confusion in *U.S. Structures, Inc.* was thus palpable. Consumers in that case were purposely led to believe they were dealing with an authorized Archadeck franchisee when the defendants in fact had longer had any relationship with the franchise.

Here, Campbell does not allege facts sufficient to establish that Defendants' use of the his 1800CARSHOW trademark, 1-800-CAR-SHOW phone number, and 1800CARSHOW.com domain name is likely to create any likelihood of confusion as to the source of Defendants' products or services. The complaint does not allege that consumers accustomed to using the 1800CARSHOW number or website identified the services associated with that trademark as originating with Mark Campbell personally or with MJC and would therefore be confused if those marks were being used by Detroit Trading. If, as the circumstances alleged in the complaint suggest, the mark was linked in the marketplace with Detroit Trading, it is difficult to see how an allegation of consumer confusion could be plausibly made out by the claim that Detroit Trading used the mark. And Plaintiffs' more specific allegation that "Defendants redirected 1800.CARSHOW.com to rydershopper.com, a website under their complete control," seems to undermine their claim that Defendants'

16

use of Campbell's mark might confuse consumers. ECF No. 13, PageID.334. It appears to the contrary that consumers were being told the website for Detroit Trading was no longer 1800.CARSHOW.com but instead rydershopper.com. Finally, nowhere in the Second Amended Complaint do Plaintiffs allege that they and Defendants are providing competing goods or services. Accordingly, Defendants' alleged use of Campbell's marks could not plausibly create a likelihood of confusion about the origin of goods or services as between Campbell and Detroit Trading. Plaintiffs' trademark infringement claim will therefore be dismissed.

## V. Cybersquatting

Campbell also claims that Defendants engaged in "cybersquatting" by continuing to use the 1800CARSHOW trademark and 1800CARSHOW.com domain name after terminating his and MJC's relationship with Detroit Trading. The 1999 Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), prohibits "cybersquatting," which occurs when a person other than the trademark holder uses, registers, or traffics in "the domain name of a well known trademark" and then attempts to profit from that unauthorized use, registration or trafficking "by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 2014 (6th Cir. 2004). Plaintiffs fail to state

17

a claim upon which relief could be granted because they do not allege that Defendants either registered the domain name, held it ransom, or used it to divert business away from Campbell.

A successful claim for cybersquatting requires the trademark owner asserting the claim to show that: (1) "he has a valid trademark entitled to protection"; (2) "the mark is distinctive or famous"; (3) "the defendant's domain name is identical or confusingly similar to the mark or, in cases of famous marks, dilutive of the mark"; and (4) "the defendant used, registered or trafficked in the domain name"; with (5) "a bad faith intent to profit." *Detroit Coffee Co., LLC v. Soup for You, LLC*, 396 F.Supp.3d 754, 775 (E.D. Mich. 2019) (citing *DaimlerChrysler*, 388 F.3d at 2014). The factual scenario set forth in the Second Amended Complaint does not support a claim for cybersquatting. This is not a case where the defendants created a domain name that was confusingly similar to a protected mark with the intent to profit from consumer confusion. Instead, Plaintiffs are claiming simply that Defendants continued to use the 1800CARSHOW.com domain after Detroit Trading parted ways with Campbell and MJC, and that Defendants did not have permission to do so. Plaintiffs' cybersquatting claim will be dismissed.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (ECF No. 9) is hereby **GRANTED**. The Second Amended Complaint is **DISMISSED**

**WITHOUT PREJUDICE**. The Court grants Plaintiffs leave to file an amended pleading if they do so within 30 days of the date of this Order.

**SO ORDERED.**

Dated: June 30, 2020              s/Terrence G. Berg
                                  TERRENCE G. BERG
                                  UNITED STATES DISTRICT JUDGE

19