UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MJC VENTURES LLC ET AL.**, | 2:19-cv-13707-TGB-EAS |
| Plaintiffs, | HON. TERRENCE G. BERG |
| v. | |
| **DETROIT TRADING COMPANY ET AL.**, | **ORDER DENYING PLAINTIFFS' MOTION FOR REMAND (ECF NO. 17),** |
| Defendants. | **GRANTING DEFENDANTS' MOTION TO STRIKE AND DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT (ECF NO. 18),** |
| | **DENYING AS MOOT PLAINTIFFS' MOTION TO STAY DISPOSITIVE MOTION PRACTICE (ECF NO. 21),** |
| | **AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (ECF NO. 34)** |

This is a business and family dispute regarding the control of Defendant Detroit Trading Company ("Detroit Trading"). Former Chief Executive Officer and Board Member Mark Campbell, and his limited-liability corporation MJC Ventures LLC ("MJC")—a shareholder of

Detroit Trading—are suing Detroit Trading and its directors, who took actions to remove Campbell from his leadership positions and terminate his lucrative consultancy agreement with the company. After this Court dismissed without prejudice Plaintiffs' previous complaint under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs filed a third amended complaint which asserts claims that arise entirely under Michigan statutory and common law. ECF No. 16. Additionally, Plaintiffs filed a motion to remand the action to Oakland County Circuit Court. ECF No. 17. Defendants oppose remand and also filed a motion to strike Plaintiffs' amended complaint and dismiss the complaint. ECF No. 18. After these motions were fully briefed, Plaintiffs filed a motion for leave to file a fourth amended complaint. ECF No. 34.

For the reasons discussed below, the Court will **DENY** Plaintiffs' motion to remand (ECF No. 17), **GRANT** Defendants' motion to strike and motion to dismiss (ECF No. 18), **DISMISS** Plaintiffs' motion to stay dispositive motion practice as moot (ECF No. 21), and **DENY** Plaintiff's motion for leave to amend (ECF No. 34).

## I.   BACKGROUND

The facts of this case are outlined in this Court's previous order to dismiss. ECF No. 15, Page.ID.572-75. In short, Plaintiffs claim that the individual Defendants, who own approximately 44 percent of Detroit Trading's stock, staged a corporate "coup" against Mark Campbell by

working with other shareholders to form a majority capable of ousting Campbell, a minority shareholder, from company leadership.

According to the Third Amended Complaint, the individual defendants took several actions to "freeze" Mark Campbell out of the Detroit Trading. ECF No. 16, PageID.613. The Amended Complaint contends that through a July 2019 written shareholders' consent, a majority of Detroit Trading's shareholders agreed to (1) amend the company's bylaws to increase the number of seats on the Board of Directors, (2) provide for election of new Directors by majority vote, and (3) ultimately remove Campbell from the Board of Directors. ECF No. 16, PageID.614-15. A second written consent of the shareholders amended the Articles of Incorporation to authorize the election of Directors by majority vote and allowed for the election of individual Defendants Bonner, Ganguly, and John Campbell to the Board of Directors. ECF No. 16, PageID.615. As a result of Mark Campbell's removal from the Board of Directors, Plaintiffs allege that the Defendants engaged in a series of "oppressive acts," including terminating his employment and/or consulting relationship with Detroit Trading and revoking access to company property. Additionally, Plaintiffs contend that Defendants continue to use the 1800CARSHOW trademark, 1-800-CAR-SHOW phone number, and 1800CARSHOW.com domain name without permission and against the express direction of Mark Campbell and MJC Ventures—the owners of the intellectual property. ECF No 16, PageID.618. Finally, Plaintiffs contend that

3

Defendants' action deprived them of any meaningful return for their shareholder investment and that they refused to declare shareholder dividends until this year while simultaneously paying Defendants "excessive" salary. ECF No. 16, PageID.634.

Based on the above facts, the Third Amended Complaint brings state claims for (1) shareholder oppression, (2) breach of fiduciary duties, (3) unjust enrichment, and (4) breach of contract under Michigan law.

## II.   PROCEDURAL HISTORY

On June 30, 2020, this Court granted without prejudice Defendants' motion to dismiss on each of Plaintiffs' federal and state law claims. Plaintiffs filed their Third Amended Complaint on July 29, 2020, which dropped all federal law claims and asserted one new state-law cause of action for breach of contract. After Plaintiffs filed their Third Amended Complaint, they then submitted a motion to remand, arguing that this case should be remanded to Oakland County Circuit Court because the newly amended complaint that they filed in federal court asserts claims only arising under Michigan law. Specifically, Plaintiffs argue that the claims are "quintessentially state-law questions," and "it would [] be more fair to the parties to have a state court resolve the matter, and comity obviously demands the same." ECF No. 17, PageID.705 (quoting *Roth v. Viviano*, No. 15-11972, 2016 WL 2957931, at *6 (E.D. Mich. May 23, 2016)). Plaintiffs also point to the language of the Court's previous order, granting Defendants' motion to dismiss,

4

which notes that "because the federal causes of action will be dismissed the Court would decline to exercise supplemental jurisdiction over a state-law action for unjust enrichment only. The court would likewise decline to exercise such jurisdiction over Plaintiffs' state-law claims for shareholder oppression and breach of fiduciary duty in the wake of dismissal of the federal cause of action." ECF No. 17 ,PageID.702.

Defendants, however, argue that Plaintiffs' motion to remand is an "improper forum manipulation," because the Third Amended Complaint "simply removes all federal claims and repleads the state-law claims this Court dismissed on the merits." ECF No. 19, PageID.739. In particular, Defendants assert that Plaintiffs' new complaint re-alleges the same state-law claims without any new or different facts and adds only one "repackaged, manufactured" claim for breach of trademark license agreement. *Id.*

After both parties fully briefed the motion to remand (ECF No. 17), the motion to strike and dismiss Plaintiff's Third Amended Complaint (ECF No. 18), the motion to stay dispositive motion practice (ECF No. 21), and this Court had struck Plaintiff's motion to compel dividends (ECF No. 33), Plaintiffs *then* filed yet another motion seeking leave to file a Fourth Amended Complaint. ECF No. 34.

## III.   ANALYSIS

For reasons of judicial efficiency, the Court will first address Plaintiffs' motion to remand, then Plaintiffs' motion for leave to amend, and finally Defendants' motion to dismiss.

### a. MOTION TO REMAND

After the Court dismissed without prejudice the Second Amended Complaint (ECF No. 15), Plaintiffs' filed a Third Amended Complaint, asserting only those claims arising under Michigan law over which the Court had said it would decline to exercise supplemental jurisdiction, and requesting that this Court remand this action back to Oakland County Circuit Court. Plaintiffs' assert that remand is proper because this Court "dismissed Plaintiffs' federal law claims and indicated that it would decline to exercise supplemental jurisdiction over Plaintiffs' state law claims." ECF No. 17, PageID.706. Defendants oppose remand for three reasons: (1) this Court has already addressed and dismissed on the merits all the claims—including the state law claims—in the Second Amended Complaint; (2) the Third Amended Complaint asserts the same claims which this Court already dismissed, and (3) permitting remand "amounts improperly to forum manipulation, waste of judicial resources, and violates the mandate of Rule 1 to secure the just, speedy, and inexpensive determination of every action." ECF No. 19, PageID.735.

According to the doctrine of supplemental jurisdiction, a district court has "broad discretion to decide whether to exercise jurisdiction over state-law claims that are 'so related to claims in the action within such

6

original jurisdiction that they form part of the same case or controversy.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting 28 U.S.C.A. § 1367(a) (West)). The Sixth Circuit has made clear that "[t]he existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Int'l, Inc.*, 392 f.3d 195, 210 (6th Cir. 2004).

When all federal claims are dismissed prior to trial, the decision to retain jurisdiction over the state-law claims is left to the district court's discretion. *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 633 (6th Cir. 2013). The Sixth Circuit has provided a number of factors for district courts to balance to determine whether to retain jurisdiction over state-law claims:

> 'A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues.' *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (quoting *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)). The court also may consider whether the plaintiff has used 'manipulative tactics' to defeat removal and secure a state forum, such as 'simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case.' *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ('If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case.').

*Harper*, 392 F.3d at 211. *See also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997). As a "rule of thumb," the balance of

7

considerations will usually "point to dismissing the state law claims, or remanding them to state court if the action was removed." *Chelten v. Wells Fargo Bank, N.A.*, No. 11-12369, 2011 WL 3706624, at *1 (E.D. Mich. Aug. 23, 2011) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). *See also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (noting that the Sixth Circuit "applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed.").

Applying these factors here, the Court finds that the interests of judicial economy and fairness favor this Court retaining supplemental jurisdiction. First, while Plaintiffs' Third Amended Complaint adds some new case law, omits the federal claims, and adds a state law claim, the pleadings appear to be nearly identical in substance to the Second Amended Complaint this Court already dismissed. Contrary to what Plaintiffs appear to imply, in the previous order granting Defendants' motion to dismiss, this Court evaluated every federal *and* state law claim presented in the Second Amended Complaint on the merits and concluded that Plaintiffs failed to state a claim under any of their state law causes of action. *See* ECF No. 15, PageID.580, 582, 584, 587. The Court's order was clear: Plaintiffs "failed to plausibly allege grounds on which relief could be granted." ECF No. 15, PageID.572. It was only after the Court determined that each of Plaintiffs' state law claims failed to meet the threshold outlined in 12(b)(6) that the Court noted that "*even if*

8

Plaintiffs *could* state a claim for unjust enrichment . . . the Court would decline to exercise supplemental jurisdiction over a state-law action for unjust enrichment only." ECF No. 15, PageID.583 (emphasis added). The goal of judicial efficiency will be achieved if this Court continues exercising jurisdiction because the Third Amended Complaint includes the claims, facts, and allegations this Court has previously addressed.

While the Court acknowledges that in its previous order it stated it would decline supplemental jurisdiction over state-law actions only, the circumstances under which the Court made that statement have shifted significantly. *See Carnegie-Mellon Univ.*, 484 U.S. at 350 ("[A] federal court should consider and weigh in each case, and *at every stage of the litigation*, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims") (emphasis added). The most critical new fact at this stage of the litigation is Plaintiffs' decision to file a motion for leave to amend their complaint for the fifth time. And this action by Plaintiffs seeks the Court's continued jurisdiction. Under Federal Rule of Civil Procedure 15(a), this Court must determine whether leave to amend should be granted, or, as Defendants' argue, whether it should be denied due to evidence of "undue delay, bad faith, undue prejudice to the non-movant, or futility." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001). The test to determine whether a proposed amendment is futile is the same as that which Court

applies in evaluating a Rule 12(b)(6) motion. *See Cicchini v. Blackwell*, 127 F. App'x 187, 190 (6th Cir. 2005) (citing *Ziegler*, 249 F.3d at 518) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

This is precisely the type of case where the interest of avoiding the "multiplicity of litigation," here having the state court re-engage in an evaluation this Court must already conduct, "outweigh our concern over needlessly deciding state law issues." *Moon,* 465 F.3d at 728. *See e.g. Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002) ("The parties had already argued the merits of the claims to the district court. It would make little sense to require [defendant] to expend additional resources making the same arguments in state court."). Because the Court already has to engage in an evaluation of whether the proposed complaint would survive a Rule 12(b)(6) motion, judicial efficiency counsels strongly in favor of retaining jurisdiction to also resolve the pending motion to dismiss.

The interests of judicial economy also support this Court retaining jurisdiction because this case has been on this Court's docket for fifteen months and several extensively briefed motions are currently pending. *See Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992). While formal discovery has not yet begun, heavy motions practice by the parties has caused the Court to become familiar with the facts of the case and to invest significant time in resolving previous motions to

dismiss and to compel dividends. ECF No. 15, ECF No. 33. *See Harper,* 392 F.3d at 211; *Stevens*, 533 F. App'x at 633. Together, the time already spent on this litigation combined with the concerns about unnecessary multiplicity weigh in favor of retaining jurisdiction.

There is also some concern that Plaintiffs are employing arguably "manipulative tactics" to both delay resolution of pending motions and control the forum to their advantage. *See Carnegie-Mellon Univ.*, 484 U.S. at 357. "[D]istrict courts are expressly permitted to 'consider whether the plaintiff has used manipulative tactics' to defeat removal and secure a state forum, such as 'simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case.'" *Stroud v. Bank of Am., N.A.*, No. 13-10334, 2013 WL 3043219, at \*3 (E.D. Mich. June 17, 2013) (quoting *Harper*, 392 F.3d at 211 (quoting *Carnegie–Mellon Univ.*, 484 U.S. at 357)). It is undisputed that Plaintiffs' Third Amended complaint deleted the federal claims that were originally the basis of this Court's jurisdiction. *See Taylor*, 973 F.2d at 1288 (noting that "plaintiffs' federal claim was *not* abandoned until the filing of the amended complaint." (emphasis in original)). Again the Court recognizes that unlike many cases where the Sixth Circuit has determined denying remand was appropriate, parties have not started discovery and the Third Amended Complaint did not only delete the federal claims, but also minimally reorganized its structure and added some new legal citations. But the issue of manipulative tactics

nonetheless remains a concern: Plaintiffs waited until nearly six months after Defendants filed their motion to dismiss the Third Amended Complaint to request leave to amend *again*—even after the Court noted in a prior order that it was concerned with "judicial efficiency." ECF No. 33, PageID.1106. Despite the Court raising this concern about the pending motions and their efficient resolution, Plaintiffs noted that granting the motion for leave to amend would moot Defendants' motion to strike and dismiss the amended complaint. ECF No. 34, PageID.1110.

While no single factor is dispositive, taken together the Court finds that the interest of judicial economy and fairness overcome the Sixth Circuit's general presumption against retaining jurisdiction when there are no federal claims left in a case. Accordingly, Plaintiffs' motion for remand will be denied and the Court will evaluate the remaining pending motions.

### b. Motion for Leave to Amend

Plaintiffs contend an amendment of the Complaint is necessary because of "new evidence" that as of December 31, 2020, Detroit Trading Company allegedly was able to pay at least $2 million in dividends. ECF No. 34, PageID.1119. According to Plaintiffs, the "further denial of dividends in December of 2020" resulted in "substantial interference in Plaintiffs' shareholding interest under MCL 450.1489." ECF No. 34-2, PageID.1133. Defendants oppose giving Plaintiffs leave to amend because the proposed Fourth Amended Complaint "does not present any

12

additional claims or legally actionable conduct," makes the "very same claims" brought in the Third Amended Complaint, and the "new" allegation alleged is "false [and] misleading." ECF No. 35, PageID.1384-85.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." However, a district court may deny leave to amend when there is evidence of "undue delay, bad faith, undue prejudice to the non-movant, or futility." *Ziegler*, 249 F.3d at 519. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Cicchini*, 127 F. App'x at 190 (citing *Ziegler*, 249 F.3d at 518).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss a lawsuit if they determine that the plaintiff has "fail[ed] to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Although Rule 8(a) requires only that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action" in support of their claims. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

At the outset, the Court takes careful note of the timing and content of the proposed Fourth Amended Complaint, which raises concerns about bad faith and undue delay. As discussed in the previous section, Plaintiffs' motion for leave to amend their complaint came nearly six months after the third amended complaint was filed and well over a year after the second amended complaint was removed to this Court.[1] At the

---

[1] Prior to bringing this claim into federal court, Plaintiff also filed various iterations of their complaint in state court. Plaintiffs originally filed their Complaint in state court alleging three state law causes of action: shareholder oppression, breach of fiduciary duty, and unjust enrichment. ECF No. 1-1. In lieu of filing an answer, Defendants moved to dismiss on October 18, 2019. ECF No. 9, PageID.189, n. 4. On November 1, 2019, Plaintiff filed an amended complaint which added a state law claim for wrongful discharge. ECF No. 1-2. Defendants again moved to dismiss the First Amended Complaint on November 21, 2019. In response, on December 11, 2019, Plaintiff filed a second amended complaint adding

14

time Plaintiffs sought leave to file the latest proposed iteration of their complaint, the Court had already granted Defendants' motion to dismiss the Second Amended Complaint, there were multiple fully briefed motions before the Court, the Court had struck Plaintiffs' motion for dividends and specifically directed parties not to file any more motions without leave.

Plaintiffs' allegation that "new" and "additional facts" have arisen is dubious. The differences between the Third Amended Complaint and the proposed Fourth Amended Complaint are few. Plaintiffs allege no new claims or recently revealed actionable conduct by Defendants. Instead, the proposed Fourth Amended Complaint states that the same "campaign of oppressive dividend deprivation" has *continued* and that Defendants had ample ability to pay seven-figure dividends, according to the affidavit of Plaintiffs' expert. *See* ECF No. 34-2, PageID.1154,1180, 1186-87, 1198, n. 7, 1206-08. But, the underlying allegation that Defendants engaged in "dividend deprivation" was already before the Court when it evaluated the plausibility of the claim and the length of time of this alleged practice does nothing to change that evaluation. The only other change made by Plaintiffs in their proposed Fourth Amended Complaint is the addition of several footnotes referencing when Plaintiffs' counsel represented a party in a cited case decision—which has

---

federal claims arising under the Lanham Act. ECF No. 1-3. Defendants removed this case to federal court on December 17, 2019.

no bearing on the Court's analysis. *See* ECF No. 34-2, PageID.1153, n. 3, 1184, n.4, 1186, n. 5, 1192, n. 6. Requiring Defendants to re-brief a motion to dismiss on the basis of such bare additions raises the question of whether Plaintiffs were dilatory in asking for leave to amend in order to evade dismissal and maneuver both the Court and Defendants into repetitive motion practice. *See Ziegler*, 249 F.3d at 519 (6th Cir. 2001).

However, the Court need not reach a conclusion regarding any questions of bad faith or undue prejudice because Plaintiffs' motion for leave to amend will be denied on the merits. While the Court is mindful of the liberal standard for granting leave to amend, Plaintiffs' motion for leave to amend will be denied because the allegations in the Fourth Amended complaint are futile: they could not withstand a Rule 12(b)(6) motion to dismiss. *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). The proposed Fourth Amended Complaint is futile because the only change from the Third Amended Complaint is the addition of the fact that the "dividend deprivation" has continued since the filing of the previous complaint.

Plaintiffs assert that this failure to pay dividends, despite Detroit Trading's financial ability to do so, amounts to shareholder oppression under Michigan law. ECF No. 34-2, PageID.1186. To state a claim for shareholder oppression, a plaintiff must establish: "(i) that he is a shareholder of the corporation; (ii) that the defendants were 'directors' or 'in control of the corporation'; (iii) that the defendants engaged in acts;

16

and (iv) that those acts were 'illegal, fraudulent, or willfully unfair and oppressive' to the corporation or to them as shareholders." *Smith v. Smith*, Case No. 19-10330, 2020 WL 2308683, at *8 (E.D. Mich. May 8, 2020) (referencing *Franks v. Franks*, 330 Mich. App. 69, 79 (Mich. Ct. App. 2019).

Plaintiffs' proposed Fourth Amended Complaint fails to allege facts showing that the decisions of Detroit Trading's shareholders and Board constitute "willfully unfair and oppressive conduct." First, Mich. Comp. Laws Ann. § 450.1489(3) is clear that oppressive conduct does not include "conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure." Here, Plaintiffs have failed to allege that the actions taken by Detroit Trading's shareholders and newly installed Board of Directors to remove Plaintiffs from any affiliation with Detroit Trading Company were inconsistent with the company's articles of incorporation or bylaws, or that these actions were taken in violation of written agreements by a majority of company shareholders, and the Board. *See* also ECF No. 15, PageID.577-78.[2]

Second, Plaintiffs' allegations are foreclosed by Michigan's business judgment rule. The Sixth Circuit is clear that "in the absence of bad faith

---

[2] This deficiency was addressed in the Court's motion to dismiss Plaintiffs' Second Amended Complaint, but was not remedied by the Third Amended Complaint or proposed Fourth Amended Complaint. *See* ECF No. 15, PageID.577.

or fraud, courts will not interfere with the discretion of the directors in deciding whether to declare a dividend." *Wolding v. Clark*, 563 F. App'x 444, 453 (6th Cir. 2014). Contrary to Plaintiffs' brief, a "refusal to declare dividends where company had financial means" to do so does *not* on its own constitute shareholder oppression. ECF No. 34-2, PageID.1142 (citing *Blankenship v. Superior Controls, Inc.*, 135 F.Supp.3d 608 (E.D. Mich. 2015)). Rather, a plaintiff must demonstrate that the refusal to declare dividends was a fraudulent decision or a decision made in bad faith before courts may interfere. *See Blankenship*, 135 F.Supp.3d at 620 (quoting *Wolding*, 563 F. App'x at 454).

Plaintiffs contend that the business judgment rule should not apply to the dividends decisions because: (1) according to expert Thomas Frazee, Detroit Trading Company was able to pay at least a $2 million dividend to its shareholders without harming the company, (2) the denial of dividends has disproportionately impacted Plaintiffs because "Defendants are receiving disguised dividends via inflated compensation, while Plaintiffs' compensation as an employee/consultant have been terminated by Defendants," and (3) the "dividend starvation has extended now over 20 months." ECF No. 34-2, PageID.1187, 1207, 1208. None of these facts or allegations, plausible or not, provide evidence to establish that Defendants' decisions regarding the distribution of dividends was motivated by fraud or bad faith.

Defendants' ability to pay more in dividends than they chose to declare is not evidence of fraud or bad faith in and of itself. As the Michigan Supreme Court has held:

> Interference with the business judgment of corporate directors is not justified by allegations that a different policy could have been followed. Whether larger amounts of dividends could have been paid without damage to the financial positions of the corporations is a matter upon which business judgment may differ. Without specific proof which would amount to a showing of a breach of fiduciary duty, such allegations are speculative and do not support judicial intervention.

*Matter of Est. of Butterfield*, 418 Mich. 241, 263 (1983). It is undisputed that Plaintiffs received $210,000 in dividends in 2020 and could still receive additional disbursements because Defendants have yet to decide on year-end 2020 dividends. ECF No. 35, PageID.1386, 1388. Without more facts about Defendants' behavior, the Court cannot understand how distributing six-figure dividend amounts—as opposed to the seven-figures Plaintiffs' believe should be distributed—could be considered fraud or bad faith, as opposed to a justifiable business choice. *See Bell Atlantic Corp.*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration in original) (internal citations omitted)

The affidavit of the expert does nothing to supplant this deficiency in the pleadings. "[I]n ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court generally may not consider any facts

19

outside the complaint and exhibits attached thereto." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (referencing *Amini*, 259 F.3d at 502). While in some circumstances a court may take judicial notice of public records or the existence of some documents, "a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute." *Id*. An opinion offered regarding the business judgments, financial wealth, and dividend decisions of a corporation is clearly subject to disagreement. Therefore, since the expert affidavit is not part of the public record and is clearly subject to reasonable dispute, the Court will not consider it when evaluating the sufficiency of the pleadings.

Plaintiffs' claims that they were disproportionately impacted by the denial of dividends are also unsupported. As was already stated Plaintiffs have provided no evidence that Detroit Trading's actions to terminate Plaintiffs' compensation were inconsistent with the company's articles of incorporation or bylaws. The mere allegation that Defendants' are receiving "disguised dividends via inflated compensation" without more is unable to withstand a Rule 12(b)(6) motion. *See Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013) ("This Court is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by facts alleged in the complaint.").

Finally, Plaintiffs contend that Defendants' bad faith and fraud is shown by the fact that the length of the claimed "dividend deprivation"

has now extended to almost twenty months. But this argument is misleading. Plaintiffs have in fact received dividends twice in 2020. ECF No. 35, PageID.1386. And, as previously discussed, there is no factual support that any of the decisions regarding dividends—the amount or frequency—was made in bad faith. If a particular claim does not have enough factual support to withstand a motion to dismiss, simply alleging that the claimed conduct lasted longer gains nothing. While Plaintiffs allege multiple times that Defendants actions were "intentional, willful, and effected in bad faith," labeling behavior as oppressive without providing any factual support to back these claims is insufficient. ECF No. 34-2, PageID.1155. *Sam Han*, 541 F. App'x at 625 ("[T]he complaint does not need detailed factual allegations but should identify more than labels and conclusions.") (alteration in original) (internal punctuation and citations omitted).

Because the proposed amendments to Plaintiffs' complaint consist solely of conclusory allegations and fail to provide, as required by *Twombly*, the "sufficient factual matter" necessary to create an inference of shareholder oppression, the Court will deny Plaintiffs' motion for leave to file a Fourth Amended Complaint.

### c. **MOTION TO STRIKE OR DISMISS**

Defendants contend that Plaintiffs filed a Third Amended Complaint and a motion to remand the action to state court to "avoid entry of a final order of dismissal with prejudice." ECF No. 18,

PageID.713. Citing both judicial efficiency and their view that the Third Amended Complaint is "redundant, immaterial, and impertinent," Defendants request that this Court strike and dismiss with prejudice Plaintiffs' Third Amended Complaint. ECF No. 18, PageID.732. Because the Court will dismiss the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), the Court declines to evaluate Defendants' arguments requesting this Court strike the Complaint pursuant to Fed. R. Civ. P. 12(f).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss a lawsuit if they determine that the plaintiff has "fail[ed] to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens*, 500 F.3d at 527 (citing *Kottmyer*, 436 F.3d at 688).

Although Rule 8(a) requires only that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of their claims. *Albrecht*, 617 F.3d at 893 (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

As outlined in the preceding section, the standard by which a Court assess a Rule 12(b)(6) motion to dismiss is the same standard utilized to

evaluate whether a proposed amendment to a complaint is futile. *See Cicchini*, 127 F. App'x at 190. For this reason, the Court's analysis here also demonstrates and reinforces why Plaintiffs' proposed Fourth Amended Complaint is futile. The proposed Fourth Amended Complaint only made changes with regard to Plaintiffs' allegations regarding shareholder oppression. All other facts, claims, and allegations remained substantively—if not literally—identical. If Plaintiffs' claims in the Third Amended Complaint for breach of contract, unjust enrichment, and breach of contract fail to survive a Rule 12(b)(6) motion, the proposed Fourth Amended Complaint is futile with regard to each of these claims because it does not make any new factual or legal allegations that correct a deficiency in pleadings.

Plaintiffs' Third Amended Complaint alleges four state-law causes of action. Each will be addressed in turn.

### i. Shareholder Oppression[3]

A shareholder may bring suit under the Michigan Business Corporation Act, Mich. Comp. Laws Ann. § 450.1489, "to establish that

---

[33] Because the proposed additions to the shareholder oppression claim of the Fourth Amended complaint would be futile, the shareholder oppression claims in the Third Amended Complaint would also not survive a motion to dismiss. However, for clarity and to ensure a thorough examination of the claims, the Court will still discuss the shareholder oppression claim as outlined in the Third Amended Complaint.

the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." The statute creates a means for minority shareholders to bring a direct action against those in control of a corporation for certain kinds of unlawful, fraudulent, or willfully unfair or oppressive conduct. *Blankenship,* 135 F. Supp. 3d at 618 (citing *Estes v. Idea Eng'r & Fabrications, Inc.*, 250 Mich.App.270 (Mich. Ct. App. 2002)). A shareholder who succeeds in establishing director misconduct may be granted equitable relief in a variety of forms. *See* Mich. Comp. Laws Ann. § 450.1489.

To state a claim for shareholder oppression, a plaintiff must allege the following: (1) that he is a shareholder of the corporation; (2) that the defendants were "directors" or "in control of the corporation"; (3) that the defendants engaged in acts; and (4) that those acts were "illegal, fraudulent, or willfully unfair and oppressive" to the corporation or to plaintiff-shareholders. *See Smith v. Smith*, No. 19-10330, 2020 WL 2308683, at *8 (E.D. Mich. May 8, 2020). When the claim is that defendants' acts were "willfully unfair and oppressive," the plaintiff must allege that: (1) "the acts amounted to a 'continuing course of conduct or a significant action or series of actions that substantially' interfered with their interests as shareholders"; and (2) "defendants took those acts with the intent to interfere with their interests as shareholders." *Id*. (quoting Mich. Comp. Laws Ann. § 450.1489(3)). *See Franks*, 2019 WL 4648446,

at *10. But the statute also contains a safe harbor that excludes from the definition of "willfully unfair and oppressive conduct" any "conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure." *Smith*, 2020 WL 2308683, at *8 (citing Mich. Comp. Laws Ann. § 450.1489(3)).

Previously, this Court determined that Plaintiffs' failed to state a claim for shareholder oppression because Plaintiff failed to allege that the allegedly oppressive actions by Detroit Trading's shareholders and new Board of Directors were "inconsistent with the company's articles of incorporation or bylaws." ECF No. 15, PageID.577-78. In the Third Amended Complaint, Plaintiffs contend that Mich. Comp. Laws Ann. § 450.1489(3) does not protect Defendants conduct because the "safe harbor" provision does not extend to situations where the "totality of the circumstances demonstrates oppression, or where the company's governing documents are used oppressively." ECF No. 16, PageID.630.

While Plaintiffs provide new *legal* arguments, they fail to provide new *factual* allegations or evidence to support their claim that Defendants utilized the governing documents "oppressively" or that the totality of circumstances demonstrate oppression. Instead, Plaintiffs provide a collection of various cases asserting that agreements to oppress are not protected by Mich. Comp. Laws § 450.1489(3). While that may be true, these legal conclusions alone are insufficient to withstand a motion

25

to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs have still failed to allege any facts which demonstrate how the challenged decisions, set forth in writing, constitute "willfully unfair and oppressive conduct."

Further, the cases Plaintiffs' cite for the proposition that conduct permitted by bylaws or articles of incorporation may still be oppressive are distinguishable from the limited set of facts outlined in Plaintiffs' complaint. For example, in *Bromley v. Bromley*, the plaintiffs provided ample evidence of the oppressive conduct of a single majority shareholder who caused the corporation to "expend exorbitant amounts of money in transactions to which he had an interest," "superficially ratified" deals, and ejected several plaintiffs from the board *after* the lawsuit began. No. 05-71798, 2006 WL 2861875, at *6 (E.D. Mich. Oct. 4, 2006). Here, nothing remotely analogous has been alleged and all the conduct labeled oppressive was conducted by a majority of shareholders—not a lone shareholder as in *Bromley*. Further, the plaintiffs in *Bromley* supported their allegations with specific facts about the circumstances surrounding the alleged oppressive behavior and why it looked "suspiciously like a corporate freeze-out." *Id*. at *6. The plaintiffs provided evidence that the reason given for amending the bylaws did not conform with the amendments themselves and the amendments made "it possible for interested shareholders to ratify transactions where a director has a

conflict of interest." *Id*. at *6. No such facts are provided by Plaintiffs. The only similarity between the facts alleged in the Third Amended Complaint and those alleged in *Bromley* is both claim that one of the oppressive acts was an amendment in the bylaws that changed the number of directors. But the court in *Bromley* even noted that such an amendment "appears innocuous on its own, but in context it is disturbing." *Id*. at *7. The context the court refers to in *Bromley* is the fact that the bylaws were amended—again by a single shareholder— "[f]ollowing the commencement of this action . . . to decrease that number from seven to four, excluding Plaintiffs." *Id*. The bylaws were then amended once more to add three independent businesspeople. Here, there are no such facts establishing a similarly "disturbing" context: the amendments at issue were not made by a majority and not a singular person, were made before the commencement of this action, and there are no allegations that new amendments regarding the size of the board have been adopted since the lawsuit.

Additionally, Plaintiffs' allegations that Defendants engaged in shareholder oppression by refusing to declare dividends remains foreclosed by Michigan's business judgment rule. The Sixth Circuit is clear that "in the absence of bad faith or fraud, courts will not interfere with the discretion of the directors in deciding whether to declare a dividend." *Wolding*, 563 F. App'x at 453. Once again, Plaintiffs' only allege that Defendants failed to pay dividends when they had "the

financial wherewithal to do so," but provide no facts or evidence, plausible or not, to establish that Defendants' decisions regarding the distribution of dividends was motivated by fraud or bad faith. ECF No. 16, PageID.595. As this Court has previously stated, "[t]he mere allegation that Detroit Trading's Board could have declared dividends, even when taken as true, does not warrant a finding that it was shareholder oppression for the Board not to do so." ECF No. 15, PageID.579. Additionally, as conceded by Plaintiffs' in later briefing, Detroit Trading has in fact issued dividends twice, so it is inaccurate to state that Plaintiffs have "been deprived of any and all shareholding interest in Detroit Trading." ECF No. 16, PageID.620; ECF No. 25, PageID.861. Without any support, Plaintiffs asserts that the issuance of this dividend was Defendants attempt to "inoculate themselves from liability" and the difference in benefits Plaintiffs would have received from their salary is substantial. ECF No. 25, PageID.861. But again, none of these conclusory statements allege facts showing that bad faith or fraud motivated the decision not to issue larger or more frequent dividends. *See Wolding*, 563 F. App'x at 453-54. Therefore, the Court will not interfere with the independent business judgment of Detroit Trading.

Finally, Plaintiffs' fail to state a claim for shareholder oppression because they do not allege that they have suffered injury in their capacity as shareholders. To make out a claim of shareholder oppression, a plaintiff must establish that "the directors or persons in control of the

28

corporation engaged in a 'continuing course of conduct' or took 'a significant action or series of actions' that substantially interfered with the interests of the shareholder *as a shareholder* and that they did so with the intent to substantially interfere with the 'interests of the shareholder *as a shareholder*.'" *Franks*, 944 N.W.2d at 404 (emphasis added). In contrast, Plaintiffs, appear to take issue with Defendants' conduct largely in the context of Campbell's longstanding corporate leadership of Detroit Trading and the consulting work for which he has historically been compensated via his company, MJC. But the Sixth Circuit is clear that "exclusion from corporate governance is not recognized as minority oppression under this statute." *Wolding*, 563 F. App'x at 453. Nor can Mich. Comp. Laws Ann. § 450.1489 "protect plaintiff's right to employment by the corporation, or to his seat on the board of directors." *Hofmesiter Family Tr. v. FGH Indus., LLC*, No. 06-CV-13984-DT, 2007 WL 1106144, at *5 (E.D. Mich. Apr. 12, 2007). The Court is not persuaded by Plaintiffs' arguments to the contrary.

In sum, Plaintiffs have alleged no facts which show how the challenged shareholder and Board decisions constitute "willfully unfair and oppressive conduct," under Mich. Comp. Laws Ann. § 450.1489(3). These claims for shareholder oppression will accordingly be dismissed.

### ii.  Breach of Fiduciary Duty

In Michigan, directors and officers of corporations owe fiduciary duties and a strict duty of good faith to the corporation they serve, as well

as to its shareholders. *Prod. Finishing Corp. v. Shields*, 405 N.W.2d 171, 174 (Mich. 1987). *See* Mich. Comp. Laws Ann. § 450.1541a(1) (codifying the common-law rule)). *See also Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012); *Wallad v. Access BIDCO, Inc.*, 600 N.W.2d 664, 666 (Mich. 1999) (per curiam). When a fiduciary duty exists, the fiduciary "has a duty to act for the benefit of the principal regarding matters within the scope of the relationship." *Prentis Family Found. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 906 (Mich. 2005) (per curiam). This means that directors must act on the shareholders' behalf "in good faith, 'with the degree of diligence, care and skill . . . which an ordinarily prudent and loyal person would exercise under similar circumstances in a like position." *Pittiglio v. Michigan Nat'l Corp.*, 906 F. Supp. 1145, 1154 (E.D. Mich. 1995) (quoting *Plaza Secs. Co. v. Fruehauf Corp.*, 643 F. Supp. 1535, 1542 (E.D. Mich. 1986)). Previously, this Court determined that Plaintiffs had failed to allege facts that explain why individual Defendants' decision to end Detroit Trading's relationship with Plaintiffs, and the resulting consequences of that choice, was a breach of fiduciary duty. Plaintiffs' Third Amended Complaint fails to remedy this deficiency in the pleadings.

The Third Amended Complaint alleges that Defendants breached their fiduciary duties when they terminated Detroit Trading's relationship with both Plaintiff Campbell and Plaintiff MJC. As a result of this termination, Plaintiffs' allege that they were denied payment of

"meaningful dividends," excluded from "meaningful involvement," shut out of decision-making by bad faith amendments to Detroit Trading's bylaws and articles of incorporation, and more. *See* ECF No. 16, PageID.658. The Court finds that Plaintiffs' breach of fiduciary duty claims are not well-pled.

Aside from conclusory statements that Defendants' actions were taken in bad faith, Plaintiffs' point to no facts suggesting that the business decisions of the directors were not taken in the best interests of the company or otherwise oppressive. *See In re Great Lakes Comnet, Inc.*, 586 B.R. 718, 729 (Bankr. W.D. Mich. 2018) (noting that plaintiff "must amplify his breach of fiduciary duty claim with factual allegations that are consistent with *Twombly* and *Iqbal* and that are sufficient under Michigan law to rebut the business judgment rule."). Plaintiffs' offer no factual allegations that Defendants deceived other directors about the financial condition of the corporation, acted on false information, or otherwise misused their authority. Nor does the Third Complaint present any other financial or business facts which support the contention that the directors were guided by fraud or bad faith—rather than business judgment—when they voted to terminate Plaintiffs' employment and consulting relationships. This deficiency in the pleadings is particularly glaring because of countervailing evidence regarding the majority's decision-making process: Defendants' decisions were made pursuant to written shareholder consents where the majority of Detroit Trading's

31

shareholders were in agreement that these actions were "in the best interests of the Corporation." ECF No. 9-3, PageID.235.

Plaintiffs' cite *Bromley v. Bromley* for the proposition that majority stakeholders owe a higher standard of fiduciary responsibility to "each minority shareholder individually," but the Court finds no case law which requires a corporation to act in the best interest of a single shareholder to the detriment of the interests of other shareholders or the corporation. ECF No. 25, PageID.866 (referencing 2006 WL 2861875, at *5). Rather, as stated in *Bromley*, "[t]he law requires of the majority the utmost good faith in the control and management of the corporation as to the minority, and it is the essence of this trust that it must be so managed as to produce to each stockholder the best possible return on his investment." *Id*. at *5 (quoting *Vesser v. Robinson Hotel Co.*, 275 Mich. 133, 138 (1936)) (emphasis added). Accordingly, because Plaintiffs have failed to articulate why Defendants' fiduciary duty would require Detroit Trading to continue compensating Plaintiff Campbell and paying consulting fees to Plaintiff MJC, the breach of fiduciary duty claim will be dismissed.

### iii.  Unjust Enrichment

To state a claim for unjust enrichment under Michigan law, Plaintiffs must allege: "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of N.Y. Mellon*, 831 N.W.2d 897 (Mich. 2012). "Because this

doctrine vitiates normal contract principles, the courts employ the fiction with caution, and will never permit it in cases where contracts, implied in fact, must be established, or substitute one promisor or debtor for another." *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schools*, 443 Mich. 176, 186 (1993) (internal punctuation and citations omitted).

At the outset, the Court notes that with the exception of one newly added paragraph (ECF No. 16, PageID.660, ¶ 306) and the insertion of various synonyms, the Third Amended Complaint's claims for unjust enrichment are nearly identical to the Second Amended Complaint. ECF No. 15, PageID.584. By merely repeating the same factual allegations outlined previously, the Third Amended Complaint does not attempt to cure the defects this Court identified in its earlier Order granting Defendants' motion to dismiss, which is the central reason for providing parties leave to amend after dismissal.

Plaintiffs' Third Amended Complaint fails to properly plead either element of unjust enrichment. First, Plaintiffs do not articulate what, if any, benefit Defendants gained through the use of the trademark, phone number, and domain name. Plaintiffs fail to allege any tangible benefit, such as the transfer of cash, or intangible benefit, such a specific service that was rendered, to Defendants. *Cf. Global Technology, Inc. v. Yubei (Xinxiang) Power Steering Sys. Co. Ltd.*, Case No. 12-cv-11144, 2013 WL 12181865, at *4 (E.D. Mich. Sept. 19, 2013). But even if Plaintiffs were able to explain what specific benefit Defendants received, they are unable

to meet the second prong of the test: how the retention of these alleged benefits caused them an inequity. *Gold v. Cadence Innovation, LLC*, 577 F.Supp.2d 896, 902 (E.D. Mich. 2008) (quoting *Kammer Asphalt Paving Co.*, 443 Mich. at 197–98) ("Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it."). Not only do Plaintiffs not articulate such an inequity, they do not dispute or explain how it would be unjust for Detroit Trading to benefit from the use of the trademark, phone number, or domain name when Plaintiffs, as shareholders, would also derive tangible benefits from the corporation's use of these assets. *See* ECF No. 25, PageID.861.

For this same reason, Plaintiffs' other two allegations of unjust enrichment fail. Defendants could not have been unjustly enriched by Plaintiffs' $1.6 million investment in Detroit Trading because "Plaintiffs acknowledge receiving stock in return for that investment." ECF No. 15, PageID.583. Additionally, Plaintiffs' singular new paragraph regarding this claim alleges that Defendants' termination of Plaintiffs' salary and consulting fees "ensure that Plaintiffs would receive *no return* on Plaintiffs' shareholding interest." ECF No. 16, PageID.600 (emphasis added). But it cannot be true that Plaintiffs received "no return"—they concede they have received the distribution of dividends. ECF No. 25, PageID.861.

In sum, the claims for unjust enrichment will be dismissed because the Third Amended Complaint fails to articulate the specific benefit Defendants received and a resulting inequity when Plaintiffs did receive some form of benefit from Detroit Trading.

### iv.  Breach of Contract

Finally, the Third Amended Complaint alleges a new cause of action: breach of contract against all Defendants relating to the use of the 1800CARSHOW.COM website and 1800CARSHOW trademark. ECF No. 16, PageID.662. In short, Plaintiffs' allege that they permitted Detroit Trading "royalty-free use" of both the website and trademark, but requested that Defendants cease use once they began exhibiting "oppressive conduct" towards Plaintiffs. ECF No. 16, PageID.662. Defendants contend that the new state-law claim should be struck because it is based on the same facts as those alleged in the previously dismissed complaint, yet was not pled in the prior three iterations of the complaint. ECF No. 18, PageID.729-30. Alternatively, Defendants request the Court dismiss the breach of contract claim because Plaintiffs have failed to allege damages, which are a required element of a breach of contract action. ECF No. 18, PageID.731. Because the Court will dismiss under Rule 12(b)(6), the Court will not address Defendants' first argument.

Under Michigan law, the three essential elements of a breach of contract claim are: (1) a valid contract; (2) breach; and (3) damages. *Grifo*

& Co., PLLC v. Cloud X Partners Holdings, LLC, 485 F.Supp.3d 885 (E.D. Mich. 2020) (citing Miller-Davis Co. v. Ahrens Constr., Inc., 495 Mich. 161, 178 (2014)). Regardless of Plaintiffs' ability to adequately plead the first two elements, the complaint fails to provide any facts which show the essential third element: damages. Borlack v Mackler Bros., Inc., No. 181281, 1996 WL 33360419, at *3 (Mich. Ct. App. Aug. 20, 1996) (per curiam) ("[A] showing of damages is a necessary element in a claim for breach of contract"). Plaintiffs' only articulation of damages is the following: "As a result of Defendants' breach, Plaintiffs have been damaged." ECF No. 16, PageID.663. Such a conclusory statement without any factual allegations about what damages resulted from the breach cannot be said to meet the pleading standard. Therefore, the breach of contract claim will also be dismissed.

## CONCLUSION

For all the reasons set out above, the Court hereby **ORDERS** as follows:

- Plaintiffs' Motion for Leave to Amend (ECF No. 34) is **DENIED**;

- Plaintiffs' Motion for Remand (ECF No. 17) is **DENIED**;

- Plaintiffs' Motion to Stay Dispositive Motion Practice (ECF No. 21) is **DENIED AS MOOT**;

- Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED**, and this action is hereby **DISMISSED WITH PREJUDICE**.

36

**SO ORDERED.**

Dated: March 30, 2021     s/Terrence G. Berg
                                         TERRENCE G. BERG
                                         UNITED STATES DISTRICT JUDGE